HANNA, AN INFANT, APPELLANT, *v.* TITUS, APPELLEE.

(No. 3782—Decided May 12, 1941.)

*Mr. W. T. S. O'Hara,* for appellant.
*Mr. Robert C. Dunn,* for appellee.

CARPENTER, J.  The plaintiff, Robert Hanna, 17 years of age, a senior in high school, by his mother as next friend, sued one of his teachers, the defendant, Richard Titus, alleging he committed a wilful and malicious assault and battery upon plaintiff and praying damages therefor.  The defendant moved the court to dismiss the action "for the reason that it is not for the benefit of the infant plaintiff."

After an extended hearing in which the parties and others testified quite fully as to the transaction in question, the court granted the motion and dismissed the petition.  From this judgment this appeal on questions of law was taken.  The errors assigned were the granting of the motion and dismissal of the petition.

Two questions are thus presented: (1) Did the court have power to thus dismiss the action on such preliminary motion? and if so, (2) is the court's action sustained by the evidence?  In other words, did the court abuse its discretion?

1. The answer to the first question turned upon the

meaning of Section 11247, General Code, which is as follows:

"The action of an insane person must be brought by his guardian; and of an infant by his guardian or next friend. When the action is brought by his next friend, the court may dismiss it, if it is not for the benefit of the infant, or substitute the guardian, or any person, as the next friend."

At common law an action by an infant was brought by a "next friend," and in many states the practice is still based on that authority. Where that prevails, the court has broad supervisory powers over the action and over the "next friend" representing the infant plaintiff. A typical expression to this effect is found in the opinion in *Bertinelli* v. *Galoni,* 331 Pa., 73, 200 A., 58, 118 A. L. R., 398, where the court, speaking of the next friend, said:

"His actions are always subject to the control and supervision of the court, which has the right in each case to determine whether the litigation is in the infant's best interests."

To the same effect is *Chudleigh* v. *Chicago, R. I. & P. Ry. Co.,* 51 Ill. App., 491, 497; *Longnecker* v. *Greenwade,* 5 Dana (Ky.), 516; *Barwick* v. *Rackley,* 45 Ala., 215, 219.

In many states the statutes provide that such actions must be brought by a guardian *ad litem* appointed by the court, or by a next friend with the express approval of the court, examples of which are: 20 Mich. Ann. Statutes, 599, Section 27.680; Mason's Minn. Statutes, 1797, Section 9169; N. Y. Civil Practice, 108, Section 202.

Iowa and Wyoming have statutes identical with the Ohio law, but in neither of these states is there a reported decision regarding dismissals "if it is not for the benefit of the infant."

Apparently it is the purpose of the Ohio statute to

give some court definite supervision over actions by infants. A guardian, appointed by the Probate Court, is responsible to that court. A next friend being a mere volunteer, the trial court is invested with the same broad powers it had at common law. It may "substitute the guardian [if there be one], or any person, as the next friend," or it may dismiss the action "if it is not for the benefit of the infant."

The statute does not say when this is to be done. It is urged by plaintiff that the court can exercise this power only after the issues are made up and tried and before final judgment. This would mean that all of the costs, expenses and trouble of making up the issues and marshaling and presenting the evidence in the trial would already have been incurred. If, as in this case, the question of benefit to the infant is raised before all of this has taken place, it would be to the interest of the plaintiff to have it determined at that time. Nothing in the statute, or the common-law practice of which it is a codification, prevents it being so done.

2. While there is some dispute in the evidence as to just what did take place, it is undisputed that the plaintiff was at the time a pupil under the supervision of the defendant and another teacher, that some dispute arose between these parties about the direction the defendant gave the pupil, and words followed, and that, as a disciplinary measure, defendant slapped the cheek of plaintiff, causing it to redden for a time, but otherwise there was no physical injury.

The plaintiff testified that after this action was filed by his mother he wanted it stopped because "Well, I didn't think—didn't think the publicity for the school or myself or Mr. Titus would do us any good."

At most, any recovery could only have been for very nominal damages. In view of all the circumstances,

the trial court did not abuse its discretion in dismissing the action, and its judgment is affirmed.

*Judgment affirmed.*

OVERMYER, J., concurs.

LLOYD, J., dissenting. The next friend of the minor plaintiff was his mother, who admittedly is in all respects a proper person to act in that capacity. Unless affirmatively shown for some reason to be unsuitable, a parent above all others is a proper person to be appointed guardian of, or to act as next friend for, a minor over whom, as natural guardians, parents as provided in Section 10507-8, General Code, have the unqualified supervision and control.

It is admitted also that the petition of the plaintiff states a cause of action calling for a verdict and judgment in favor of the plaintiff, unless there is an adequate defense thereto or unless the defendant, by invoking the application thereto of Section 11247, General Code, can avoid a trial of the action on its merits.

Section 11247, General Code, Section 30 of the Code of Civil Procedure, enacted by the General Assembly on March 11, 1853 (51 Ohio Laws, 57), provides that:

"The action of an insane person must be brought by his guardian; and of an infant by his guardian or next friend. When the action is brought by his next friend, the court may dismiss it, if it is not for the benefit of the infant, or substitute the guardian, or any person, as the next friend."

The Probate Court has the power to determine who shall be appointed guardian and to refuse the appointment of any one who, in its opinion, is not a proper person to so act, and to remove an appointee if, for any reason, he becomes incapacitated. The court having passed on his fitness and qualifications, a guardian is vested with discretion in determining whether an

action such as the instant one is for the benefit of the ward. Since a next friend is a volunteer in the sense at least that he acts for the minor without an order of court, the court in which the action is brought has the power under this section to investigate and determine whether the person so acting is a fit and proper person to represent the minor, but not, it would seem, to determine in advance of trial, on motion of the defendant, whether a liability exists in an action rightly brought.

An infant is regarded as without sufficient knowledge or experience to decide for himself when and how an action shall be prosecuted for his benefit and the law recognizes no distinction between infants of tender and of mature years. Neither a duly appointed and qualified guardian nor one acting as next friend is required to ask permission of any court to commence an action which in his judgment is for the benefit of the minor. Being in theory the appointee of the court, a next friend ought not to be removed by a dismissal of the action or by substitution of another in his place, unless found to be unfitted to act in that capacity. His authority is and should be commensurate with the prosecution of the action entrusted to him. The purpose of the statute is to protect the minor, not to protect or advantage the defendant. The Legislature did not intend or contemplate providing by motion a defense which requires an answer, or by demurrer a defense where the petition fails to state a cause of action. The motion in the instant case is an attempt by the defendant to avoid answering the petition and a consequent trial on the merits.

Counsel for defendant has presented no decision of any court in Ohio or elsewhere, statute or no statute, and a search reveals none, where, under facts like or similar to those disclosed on the hearing of the motion of the defendant, a court dismissed, as not being for

the benefit of the minor, a petition of an infant by his next friend, which states a cause of action.

In *Chudleigh* v. *Chicago, R. I. & P. Ry. Co.*, 51 Ill. App., 491, the facts were that the plaintiff, in an action brought by his father as next friend, recovered a judgment on a verdict of a jury for $300 for alleged personal injuries. Upon becoming of age, he brought suit in his own behalf against the railway company on the same cause of action, pleading in his replication to the answer of the defendant that the action brought by his father as next friend was not for his benefit but was commenced by his father and next friend in collusion with the railway company solely for the latter's benefit and for a pecuniary consideration to be paid to the father. A demurrer of the defendant to the replication was sustained by the trial court. The Court of Appeals affirming the judgment on the demurrer, held that the judgment of $300 could not be collaterally attacked. The court further stated that "if the appointee of the court, his next friend, 'played him false,' the judgment is not thereby rendered void, but the defrauded plaintiff may resort to a court of equity to set aside and undo the fraudulent work and to wipe out the record, falsely obtained, by which in this suit he is confronted."

In *Bertinelli* v. *Galoni*, 331 Pa., 73, Galoni, the defendant, appealed from a judgment of $6,500 obtained by a 26-month-old infant in an action brought in her behalf by her grandmother as next friend. The judgment rendered on a jury verdict was for personal injuries sustained by the infant through the negligent operation by Galoni of an automobile owned by the father of the infant who was insured against liability therefor. The court in its opinion said:

"It is urged upon us by appellant (really the insurance company) that the grandmother cannot maintain the action in the infant's behalf, the child's parents

being alive and supporting her in their home. We think this position not maintainable. The sole purpose in having a next friend is to supply the want of capacity in the minor, to afford someone responsible for the costs. He is in no sense a party, but resembles an attorney, or a guardian *ad litem,* by whom a suit is brought or defended in behalf of another. * *⋅* The judgment against defendant is affirmed."

In Ohio, Section 11248, General Code, Section 31 of the Code of Civil Procedure of which Section 11247, General Code, is also a part, provides this protection for an infant in that thereby the next friend becomes "liable for the costs of the action," and if insolvent may be required to give security for costs. Obviously, neither of the above cases suggests any sanction for the method adopted by the defendant in the instant case.

Upon examination it will be found also that *Longnecker* v. *Greenwade,* 5 Dana (Ky.), 516 and *Barwick* v. *Rackley,* 45 Ala., 215, are in no respect similar to the instant case. In the Kentucky case the judgment rendered therein in favor of the infant was compromised and settled in behalf of the infant by his father, which, the court held, was for the benefit of the infant. In the Alabama case, an infant 16 years of age filed a motion to dismiss proceedings commenced in the Probate Court in his behalf by a next friend. The court denied the motion and the infant appealed therefrom, assigning the overruling of the motion to be error, for the reason that the next friend was a mere volunteer and believed to be irresponsible and that his interference in the affairs of the infant was wholly unauthorized. The appellate court affirmed the judgment of the Probate Court, saying:

"This assignment of error seems to be based upon the idea that to authorize a suit to be brought in the name of an infant by his next friend it is necessary for

the next friend to obtain the consent of the infant, especially if he has arrived to the age of discretion; and if such consent is not obtained, the suit must be dismissed, on the motion of the defendant. But we hold the true doctrine on this subject to be, that it is not necessary to obtain either the consent of the infant, or the leave of the court, in such cases, before the commencement of a suit. * * * A suit may be brought by a *prochien ami* without first obtaining the leave of the court for that purpose.''

The bill of exceptions herein of 50 typewritten pages discloses that the defendant testified, and called as witnesses the mother of the minor and the minor, and also the principal of the school where the alleged assault and battery occurred, who had no knowledge thereof except by hearsay. The minor and the defendant were questioned as to the alleged happening. The principal and also the defendant were questioned as to the reasonableness of the punishment inflicted—opinion evidence upon an issue which it would be the province of a jury to decide from the facts and circumstances in evidence. The facts thus adduced were sufficient in probative value to present a jury question.

If pertinent or material to the present inquiry, there might be added to the testimony of the minor quoted in the major opinion that of the defendant who, in a conversation with the minor, said: ''I told him that I did not know what the parents intended to do, whether they intended to go on or not but that I felt sure that no good could come to him from such action, because he was a senior, it is his last year, and surely there could be no good come from it, and in fact, it would certainly hurt him in the eyes of the teachers and the rest of the students to have publicity made from such a trivial matter''; and also that ''it was merely a slap of the flat of my hand directly on the cheek, didn't touch his ear, nose, mouth, or anything; slapped him with the flat of

my hand flat on the cheek. Bob said he was about two feet "from the wall. I suppose that wouldn't be far wrong. I think probably one foot would be closer. * * * His face did get a little red"; and the testimony of the boy, who said he was standing near a table about two feet from the wall against which he was driven by the force of the blow, and that his "face was red and numb for about two hours" afterward with some "swelling."

If Section 11247, General Code, contemplates that which is claimed for it, then such is proper procedure in any case of a next friend action. This would provide a very satisfactory way for a defendant in a personal injury action brought by a next friend to learn in advance exactly what the evidence of the plaintiff would be at the trial—a sort of personal injury bill of discovery. If this is the intended object of the statute, it seems passing strange that, through all of the years since its enactment, neither in Ohio nor in any other state having a similar statute, has anyone heretofore thought of so applying it. To dismiss an action brought by a competent next friend, the petition wherein states a cause of action, as was done in the instant case, would be finding the petition to be a sham, which cannot be done. The dismissal of such an action on motion of the defendant upon evidence which tends to prove the fact allegations of the petition, and upon the same sort of evidence as would be submitted on the trial of the cause upon the issues involved, would be a usurpation of the functions of the jury.

I cannot agree that, when there is no claim of incapacity, or impropriety in so acting, urged against the next friend, the plaintiff's mother, and when the father is also in accord with the commencement of the action, a minor plaintiff of a well-pleaded cause of action can be deprived of a jury trial by the method adopted in the instant case.

The entry of the judgment was something more than an abuse of discretion. It was contrary to law.